UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CHRISTOPHER J. BRODERICK, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 09-11511-DJC |
| MICHAEL G. TALBOT and MIRIAM BRODERICK, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER

**Casper, J.**                                                                                                               September 20, 2012

### I.   Introduction

This case arises out of the strained and highly contentious relationship between Plaintiff Christopher J. Broderick ("Broderick") and his former wife, Defendant Miriam Broderick ("Miriam Broderick") and her current boyfriend, Defendant Michael G. Talbot ("Talbot"), a Boston Police Department sergeant detective. Broderick asserts claims against the Defendants for violations of his civil rights under 42 U.S.C. § 1983 and the Massachusetts Civil Rights Act ("MCRA") and various state law claims including abuse of process, malicious prosecution and intentional infliction of emotional distress. The Defendants have now moved for summary judgment on all counts. For the reasons set forth below, the Defendants' motion for summary judgment as to Count I, the § 1983 claim, is GRANTED. As to the remaining state law claims, the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367 and dismisses the remaining state law claims and

counterclaims without prejudice.

## II. Burden of Proof and Standard of Review

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the undisputed facts show that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56 (a). The moving party bears the burden of showing the basis for its motion and identifying where there exists a lack of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmovant "must point to 'competent evidence' and 'specific facts' to stave off summary judgment." Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011) (citation omitted); ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002). That is, the non-movant "must come forward with evidence sufficient for a 'a fair-minded jury [to] return a verdict' in his favor." Soto-Padro v. Public Bldgs. Auth., 675 F.3d 1, 5 (1st Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). While the Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor," Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009), it "afford[s] no evidentiary weight to 'conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative.'" Tropigas de Puerto Rico, Inc., 637 F.3d at 56 (quoting Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir. 2001)); see Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000).

## III. Factual Background

Unless otherwise noted, the following are the undisputed facts.[1]

---

[1] References to the docket are abbreviated as "D. __."

Plaintiff Broderick and Defendant Miriam Broderick were married and have three minor children. Def. SOF ¶ 1; Pl. Resp. to SOF ¶ 1. Sometime in 2005, Miriam Broderick left Broderick and the residence they shared with their children. Def. SOF ¶ 1; Pl. Resp. to SOF ¶ 1. Thereafter, Miriam Broderick and co-Defendant Talbot began a romantic relationship and began living together in June or July 2006. Def. SOF ¶¶ 2, 4; Pl. Resp. to SOF ¶¶ 2, 4; Miriam Broderick Depo. at 26. Miriam Broderick is a civilian employee of the Boston Police Department. Def. SOF ¶ 5; Pl. Resp. to SOF ¶ 5; Miriam Broderick Depo. at 27. Talbot is a sergeant detective with the same police department. Miriam Broderick Depo. at 26.

In early 2006, Miriam Broderick sought and received a restraining order against Broderick. Def. SOF ¶ 3; Pl. Resp. to SOF ¶ 3. Criminal complaints were issued in July 26-27, 2006, August 3, 2006 and October 26, 2006 against Broderick for alleged violations of the restraining order. Def. SOF ¶ 6; Pl. Resp. to SOF ¶ 6; D. 51-2. These criminal complaints were issued upon applications by other Boston Police Department officers, not by Talbot. Def. SOF ¶ 7; Pl. Resp. to SOF ¶ 7; D. 51-2. Another criminal complaint was applied for against Broderick for violation of the restraining order on August 30, 2006, during a child exchange between the Brodericks at the State Police barracks in Milton, but this application was made by the Massachusetts State Police. Def. SOF ¶ 8; Pl. Resp. to SOF ¶ 8; Broderick Aff. at ¶ 5.

On September 21, 2006, while the restraining order was still in effect, there was an encounter between the parties when Miriam Broderick and Talbot went to the Boston Latin Academy to pick up her daughter after Broderick had previously been denied access by school staff to do so. Def. SOF ¶¶ 10-13; Pl. Resp. to SOF ¶ 8; D. 51-6. Broderick claims that this was "an inadvertent encounter" and once he saw Miriam Broderick, he began to leave. Broderick Aff. at ¶ 7. Talbot

approached him while displaying his badge and saying that he "was under arrest for violating the restraining order," but Broderick continued to leave and Talbot went in the opposite direction. Id. Talbot did not take physical control of Broderick, did not place any handcuffs on him and walked away. D. 51-4 at 89. Talbot left the school, was stopped by police officers a short distance away, but he was not arrested. Id. at 90. As a result of this incident, Boston Police Department officers and officers from the Family Justice Center arrived and interviewed Miriam Broderick, Talbot and others and officers from the Family Justice Center sought and obtained a warrant for Broderick's arrest for violation of the restraining order. Def. SOF ¶¶ 14, 15; Pl. Resp. to SOF ¶¶ 14, 15; D. 51-6.

Broderick alleged that a separate incident with Miriam Broderick occurred in March 2008 at the Lyndon School, where all three Broderick children were enrolled at the time. Def. SOF ¶¶ 16, 17; Pl. Resp. to SOF ¶ 16, 17; D. 51-7 at 170-74. Talbot was not present at that time. Def. SOF ¶ 18; Pl. Resp. to SOF ¶ 18. Criminal charges ultimately did not go forward against Broderick for this incident. Def. SOF ¶ 19; Pl. Resp. to SOF ¶ 19; D. 51-7 at 171-74; D. 51-8. However, Miriam Broderick alleged that another incident at the Lydon School on November 24, 2008 involving Broderick and his former mother-in-law and two of his children led another Boston Police officer to seek criminal charges against Broderick. Def. SOF ¶¶ 20, 21; Pl. Resp. to SOF ¶¶ 20, 21; D. 51-9. Talbot was not present during the November 24th incident, but Miriam Broderick sought criminal action against Broderick. Def. SOF ¶ 22; Pl. Resp. to SOF ¶ 22; D. 51-9; D. 51-10. The charges arising out of this incident were later nolle prossed. Pl. Resp. to SOF ¶ 33; Broderick Aff. at ¶ 11.

In 2008, Broderick was criminally charged with making threats against Talbot. After a jury trial, Broderick was found guilty and received a probationary sentence. Def. SOF ¶ 23; Pl. Resp. to SOF ¶ 23; D. 51-11. A condition of Broderick's probation, imposed on January 3, 2008, was a

"stay away and no contact" order as to Talbot; i.e., that Broderick remain at least 25 yards away from Talbot. Def. SOF ¶ 24; Pl. Resp. to SOF ¶ 24; D. 51-11; 51-12; Broderick Depo. at 99. This term of probation ran through January 1, 2009. D. 51-12.

On August 30, 2008, Talbot participated in a school supply distribution event at Boston City Hall Plaza in his capacity as a school resource officer for the Boston Police Department. Def. SOF ¶ 25; Pl. Resp. to SOF ¶ 25. Broderick also attended this event with his children. Def. SOF ¶ 25. Talbot claimed that Broderick approached him while waiting in line as Talbot was behind a metal barrier handing out school supplies to the families in attendance. Def. SOF ¶¶ 26, 27. Broderick alleges that Talbot approached him at this event and that he was in a "confined area . . . that made it impossible for him to leave the area once he got in line to receive school supplies." Pl. Resp. to SOF ¶ 34; Broderick Aff. at ¶¶ 12-14. Moreover, Broderick alleges that Talbot displayed his police badge to enter this "restricted area" where "[a]dmittance was limited to those who, like [Broderick], had obtained a wrist band or those who were working there, such as police officers." Pl. Resp. to SOF ¶¶ 34, 35; Broderick Aff. at ¶¶ 12-14. According to Talbot, Broderick later returned to the area where Talbot was standing and yelled to him and made gestures toward him. Def. SOF ¶ 27. Broderick alleges that Miriam Broderick came over to the area and took photographs of Talbot as he posed near Broderick. Broderick Aff. at ¶ 14. According to Broderick, Talbot used the photographs taken by Miriam Broderick to get a probation officer to file a notice of violation of probation (as Broderick alleges, the probation officer was not his assigned probation officer, but the chief probation officer). Def. SOF ¶ 28; Pl. Resp. to SOF ¶ 28, 36; Broderick Aff. at ¶ 16; D. 51-15. After a hearing on the alleged probation violation, a state district judge declined to conclude that Broderick had violated his probation finding that, although Broderick had been within 25 yards of

Talbot, his violation was not intentional. Def. SOF ¶ 30; Pl. Resp. to SOF ¶ 30; D. 51-16 at 2-5.

At some point during the course of these contentious encounters, Broderick filed several complaints against both Miriam Broderick and Talbot with the Internal Affairs Department of the Boston Police Department alleging that the officer was misusing his position to influence his custody dispute with Miriam Broderick. Pl. Resp. to SOF ¶¶ 37, 39; Broderick Aff. at ¶¶ 17, 18-19; Broderick Aff. at 108. The parties' contentions also spilled over into probate court: Miriam Broderick filed a complaint against Broderick for a change in custody of their children; Broderick filed a contempt complaint against Miriam Broderick for her failure to pay child support. Pl. Resp. to SOF ¶¶ 38, 39; Broderick Aff. at ¶ 16, 18-19.

## IV.  Procedural History

Broderick initiated this lawsuit on September 10, 2009, asserting claims under 42 U.S.C. § 1983 (Counts I and II), claims under the MCRA (Counts III through V), abuse of process (Count VI), malicious prosecution (Count VII) and intentional infliction of emotional distress (Count VIII) against Talbot, Miriam Broderick and co-Defendant Robert Dunford ("Dunford"), the then Superintendent-in-Chief of the Boston Police Department. D. 1. By stipulation, Dunford was dismissed from the case on October 16, 2010. The remaining defendants, Miriam Broderick and Talbot, filed an answer and counterclaims arising under state law against Broderick. D. 10. They have now moved for summary judgment. D. 49. The Court heard oral argument on the motion on June 7, 2012 and took the matter under advisement. D. 55.

## V.  Discussion

### A.  Broderick's § 1983 Claim Against the Defendants Is Not Time-Barred in its Entirety

The parties do not dispute that the applicable statute of limitations for Broderick's § 1983

claim is three years. D. 50 at 4; D. 54 at 3. Section 1983 actions brought in federal court are subject to the forum state's general or residual statute of limitations for personal injury actions. Owens v. Okure, 488 U.S. 235, 249-50 (1989). Here, the applicable limitations period is three years. Mass. Gen. L. c. 260, § 2A; Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001); Wade v. Brady, 612 F. Supp. 2d 90, 96 (D. Mass. 2009). For statute of limitations purposes, a § 1983 claim accrues when the plaintiff knew or had reason to know of the injury on which the action is brought. McIntosh v. Antonino, 71 F.3d 29, 33-34 (1st Cir. 1995).

Broderick filed the instant complaint on September 10, 2009. D. 1. The Defendants argue that Broderick's civil rights claims are time-barred because some of the incidents that Broderick relies upon in his complaint, namely allegations of civil rights violations based upon restraining order violations sought by Miriam Broderick, occurred in July, August and September 2006. D. 50 at 4. This argument, however, ignores the well settled law that plaintiff may establish a continuing violation of § 1983 such that only one discriminatory act need occur within the limitations period for the claims to be timely. Muniz-Cabrero v. Ruiz, 23 F.3d 607, 610 (1st Cir. 1994). There are two varieties of continuing violations: serial and systematic. Id. Systematic violations occur when a plaintiff "has been harmed by the application of a discriminatory policy or practice." Phillips v. City of Methuen, 818 F. Supp. 2d 325, 330 (D. Mass. 2011). Serial violations involve a series of violations composed of a number of acts emanating from the same animus, "'each act constituting a separate [actionable] wrong.'" Muniz-Cabrero, 23 F.3d at 610 (quoting Jensen v. Frank, 912 F.2d 517, 522 (1st Cir. 1990)).

To determine if these acts are serial violations, the court considers the subject matter of the respective violations, their frequency and the permanence of such acts, i.e., "[a]re the acts of

<u>sufficient permanence</u> that they should trigger an awareness of the need to assert one's rights?" <u>O'Rourke v. City of Providence</u>, 235 F.3d 713, 731 (1st Cir. 2001) (emphasis in original). The permanence factor is the most critical since it bears upon what the plaintiff knew or should have known at the time of the discriminatory act such that he was on notice of his claim. <u>Sabree v. United Brotherhood of Carpenters and Joiners, Local No. 33</u>, 921 F.2d 396, 402 (1st Cir. 1990). Accordingly, even if this Court assumes that the subject matter of the separate, alleged constitutional violations were sufficiently related in terms of subject matter and occurred with sufficient frequency, the Court must still determine whether each alleged act was of sufficient permanence to put Broderick on notice at that time of his §1983 claim.

The Court concludes that each of the acts alleged in 2006 before September 10, 2006 were of sufficient permanence to put Broderick on notice of the § 1983 claim he asserts against the Defendants. The filing of the criminal complaints against him in July 26-27, 2006 and August 3, 2006, upon Miriam Broderick's behalf for alleged violations of the restraining order, were of sufficiently permanent nature to put him on notice. The same can be said of the criminal complaint filed on August 30, 2006, regarding an incident during the child exchange at the MSP barracks, particularly when it occurred in the wake of the earlier criminal complaints. In his affidavit, Broderick suggests that he "later" discovered from a trooper at the barracks that Talbot had identified himself as a Boston Police Department officer on this occasion, Broderick Aff. at ¶ 5, but he does not assert when that later discovery occurred. A plaintiff bears the burden regarding the statute of limitations, see <u>O'Rourke v. Jason Inc.</u>, 978 F. Supp. 41, 46-47 (D. Mass. 1997), and this vague reference to later discovery does not meet that burden. Moreover, "[a] plaintiff cannot fail to file suit after a cause of action accrues simply because his rights continue to be violated."

Phillips, 818 F. Supp. 2d at 331.  Accordingly, so much of Count I, the § 1983 claim, that rests on alleged acts occurring before September 10, 2006, is time barred.  See Sabree, 921 F.2d at 402 (dismissing only as much of the Title VII claim as predated plaintiff's 1986 transfer attempt where his employer's prior allegedly discriminatory acts had been of sufficient permanence to put plaintiff on notice of his claims and were thus time-barred).

### B.   The Defendants Are Entitled to Dismissal of the Section 1983 Claim

To prevail on his § 1983 claim, Broderick must show that the Defendants "under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subject[ed], or cause[d] [him] to be subjected, . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ."  42 U.S.C. § 1983.  Accordingly, Broderick must show that Miriam Broderick and Talbot were acting under color of state law, Robertson v. Betz, No. 09-10449-RGS, 2009 WL 2144371, at *2 (D. Mass. July 16, 2009),  and such "'conduct deprived [him] of some right, privilege or immunity protected by the Constitution or the laws of the United States.'"  Kness v. Palmer, 182 F.3d 926, 926 (9th Cir. 1999) (quoting Leer v. Murphy, 844 F.2d 628, 632-33 (9th Cir. 1988)).

#### 1.   The Defendants Were Not Acting Under Color of State Law

"The traditional definition of acting under color of state law requires that the defendant in a  § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" West v. Atkins, 487 U.S. 42, 49 (1988) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)). Thus, the Supreme Court has made clear that if a defendant's conduct constitutes state action for the purposes of the Fourteenth Amendment, that conduct also constitutes action under color of state law for the purposes of a §

1983 action.  Id. (citing Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 935 (1982)).

Accordingly, "[a] section 1983 claim does not lie absent state action."  Alexis v. McDonald's Rests. of Mass., Inc., 67 F.3d 341, 351 (1st Cir. 1995).  There are two components to state action in this context:  1) "the deprivation must be shown to have been caused by the exercise of some right or privilege created by the state, or by a rule of conduct imposed by the state or by a person for whom the state is responsible," id.; see Lugar, 457 U.S. at 937; and 2) "the party charged with the deprivation must be a person who may fairly be said to be a state actor."  Alexis, 67 F.3d at 351.  The first component is satisfied when the "defendants were acting pursuant to a state statute that deprived plaintiffs of its rights."  Alberto San, Inc. v. Consejo De Titulares Del Condominio San Alberto, 522 F.3d 1, 4 (1st Cir. 2008).  "However, satisfaction of that first component is not sufficient in itself to satisfy the state action requirement [since] [i]f it were, 'private parties could face constitutional litigation whenever they s[ought] to rely on some state rule governing their interactions with the community surrounding them.'"  Id. (quoting Lugar, 457 U.S. at 937).  As to the second component, "'state employment is generally sufficient to render the defendant a state actor."  West, 487 U.S. at 49 (quoting Lugar, 457 U.S. at 937).  Accordingly, "generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law."  Id. at 50.

However, "[i]n general, section 1983 is not implicated unless a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or unless the conduct is such that the actor could not have behaved in that way but for the authority of his office."  Martinez v. Colon, 54 F.3d 980, 986  (1st Cir. 1995).  A defendant's "mere status as a policeman does not render all of his acts under color of state law."  Gibson v. City of Chicago, 910 F.2d 1510, 1516 (7th Cir. 1990).

However, "an officer who, motivated by personal animus, misuses his lawfully possessed authority to injure the plaintiff may be found to be acting under color or 'pretense' of law." Gibson, 910 F.2d at 1518 (citing Screws v. United States, 325 U.S. 91, 111 (1945)). Accordingly, whether a defendant has acted under color of state law involves an inquiry into whether he has "purported to act under color of state law" or, as framed in Screws, has acted under "pretense of law." Parilla-Burgos v. Hernandez-Rivera, 108 F.3d 445, 449 (1st Cir. 1997). "Action occurs under pretense of law when an individual imbued with official authority purports to exercise that authority when actually acting wholly outside of it." Id. As the First Circuit has made clear:

> [even] though "acting under color of law" includes "acting under pretense of law" for purposes of state action analysis, there can be no pretense if the challenged conduct is not related in some meaningful way either to the officer's governmental status or the performance of his duties.

Martinez, 54 F.3d at 987 (concluding that an on-shift police officer who shot a fellow off-duty officer while in the police station was not acting under color of state law). "Therefore, it is not enough for an individual merely to purport to exercise official power in order to trigger § 1983 liability, but rather the individual must actually be engaged in the abuse of official power granted by the government." Parilla-Burgos, 108 F.3d at 449.

Even reading the record in the light most favorable to the non-movant, Broderick, it cannot be said on this record that Talbot, a sergeant detective and current boyfriend of Broderick's ex-wife, was engaged in the abuse of official power in his encounters with Broderick and that such conduct subjected or caused Broderick to be subjected to a deprivation of his constitutional rights. The record reflects that Talbot was present for three of the alleged incidents: the August 30, 2006 incident at the MSP barracks (which, as previously discussed, is time-barred), the September 21, 2006 incident at the Boston Latin Academy, and the August 30, 2008 incident at Boston City Hall

Plaza. As to these incidents, Talbot never detained or placed Broderick under arrest, applied for a criminal complaint against him or took any police action against him.[2] During the Boston Latin Academy encounter, even crediting that Talbot told Broderick he was under arrest for violation of the restraining order, Talbot did not take any action against him; Broderick left the campus and Talbot walked away. Broderick Aff. at ¶ 7. To the extent that Broderick points to Talbot directing officers who later stopped him a short distance from the school, Broderick does not point to any evidence in the record that this occurred at Talbot's command as an officer other a conclusory assertion in his response to the Defendants' Statement of Facts (i.e., "Talbot then called upon his colleagues from the Boston Police Department to respond to the scene") that is not even supported by his affidavit. Compare Pl. Resp. To SOF ¶ 32 with Broderick Aff. at ¶¶ 6-7; see Miriam Broderick Depo. at 137 (testifying that Talbot may have told Broderick that he was going to call the police or that Miriam Broderick was on the phone with the police); see Vartanian v. Monsanto Co., 131 F.3d 264, 266 (1st Cir. 1997) (noting that conclusory statements in an affidavit do not raise a genuine issue of fact to defeat summary judgment). In fact, the record reflects that the officers were contacted by Miriam Broderick regarding his alleged violation of the restraining order on this occasion. D. 51-6.

During the other instance, on August 30, 2008 at Boston City Plaza, when Talbot was present, his flashing of his badge to gain access to an area where Broderick was standing is insufficient to establish state action. See Robertson, 2009 WL 214437 at *3 (rejecting contention

---

[2]To the extent that there are other incidents alleged in the complaint, "[a]s the Supreme Court has made clear, when faced with a motion for summary judgment, a plaintiff may not rely solely upon the allegations of the complaint to support the elements of plaintiff's case." Desroachers v. Bissonnette, No. 86-1916-S, 1987 WL 13244, at *2 (D. Mass. June 15, 1987) (citing Celotex, 477 U.S. at 323).

that officer's waving of handcuffs in asking plaintiff to move his car was insufficient to establish state action and citing Martinez for "reject[ion of] the argument that the brandishing of a piece of police apparatus, absent an assertion of official authority, gives private action the imprimatur of the State"); see also Galliano v. Borough of Seaside Heights, No. 03-1463, 2007 WL 979850, at *9 (D.N.J. March 30, 2007) (noting that "[w]hile the use of a state-issued weapon or device in the course of wrongful conduct 'may' be evidence that the off-duty officer acts under color of law, that alone is not sufficient to cloak the off-duty officer with authority where the use of the weapon occurs in the context of a 'clearly personal family dispute'") (quoting Barna v. City of Perth Amboy, 42 F.3d 809, 818 (3d Cir. 1994)).

Broderick gives short shrift in his brief to the live issue of whether Talbot's actions were under color of state law. Pl. Opp. at 5-6. Broderick's primary contention, however, is that Talbot, by virtue of his status as a police officer, caused him to be subjected to deprivation of his constitutional rights by others (i.e., other Boston Police Department officers and a chief probation officer) which he could not have done but for his status of a police officer. Pl. Opp. at 5-6. However, the record contains no competent evidence or specific facts from which to conclude that there is linkage from use of Talbot's police authority to the actions taken by other police officers who applied for criminal complaints on Miriam Talbot's behalf or by the chief probation officer. It is insufficient to defeat summary judgment where, as the Defendants argue, "[a]fter discovery, [Broderick] cannot offer anything more than these bare assertions." Def. Mem. at 8.

None of the alleged misconduct by Talbot–i.e., engaging police officers and a probation officer in bringing charges (or a probation violation) forward against Broderick–need be done by a police officer. That is, it is not a privilege of official authority for Talbot to engage in such

13

conduct. A civilian, including but not limited to Miriam Broderick, can bring alleged complaints of restraining order violations to the attention of the police, probation or a court and may, in fact, initiate criminal complaints on his or her own without police involvement. Mass. Dist./Mun. Cts. R. Crim. P. 2(b). That is, the Court rejects Broderick's argument that "Talbot's conduct could not have taken place but for his position as a Boston police officer and the legal authority to act as he did that comes with that position." Pl. Opp. at 6. None of the actions by Talbot on the record now before the Court that allegedly caused Broderick to be deprived of his constitutional rights could only be done by the officer's use or abuse of official authority.

Having concluded that there was no state action by Talbot, the Court cannot conclude that Miriam Broderick was a state actor. A private person may be characterized as a state actor under the so-called public function test, the joint action/nexus test or state compulsion test. Alberto San, Inc., 522 F.3d at 4; Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 5 (1st Cir. 2005). There is nothing in the record to suggest that Miriam Broderick was serving any public function in any of her encounters with Broderick. Although Miriam Broderick is a civilian employee of the Boston Police Department, there is no evidence in the record now before the Court that she used her position with the Boston Police Department against Broderick or acted under color of state law in seeking criminal complaints against him for the alleged violations of a court-issued restraining order or filing a complaint in probate court relating to the custody of their children. "The provision of information to or summoning of police officers, even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for purposes of § 1983." Estes-El v. Dumoulin, No. 6-CV-2528, 2012 WL 1340805, at *4 (E.D.N.Y. April 18, 2012) and cases cited. Nor is swearing out a criminal complaint which forms

the basis of criminal action or arrest "sufficient to convert a private party's acts into state action." Kness, 182 F.3d at 926 (citing Collins v. WomanCare, 878 F.2d 1145, 1154 (9th Cir. 1989)). Even if this Court analyzes her role under the joint action/nexus test, since the Court has concluded, for the reasons explained above, that Talbot was not acting under color of state law, there was no state action for Miriam Broderick to have joined. That is, her actions, even when viewed in the light most favorable to Broderick, neither convert her own actions or Talbot's into state action. See Lear v. Zanick, 850 F. Supp. 2d 481, 490 (M.D. Pa. 2012) (dismissing a § 1983 action against former girlfriend since such action requires "state action" and plaintiff "does not allege any facts that would enable the court to infer that [this defendant] was acting under color of state law during the investigation and prosecution [of plaintiff]"). The state compulsion test concerns whether "the state 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [actions of Miriam Broderick] must in law be deemed to be that of the State.'" Estades-Negroni, 412 F.3d at 5 (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)). That cannot be said on this record. On this record, the Court cannot conclude, neither could any reasonable jury, that Miriam Broderick's actions were attributable to the Commonwealth for the purposes of the requisite state action for Broderick's § 1983 claim.

Certainly, "[t]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federal guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992). However, even as there may be much behavior to criticize here, § 1983 is not properly invoked on this record. Although there remains some factual dispute about the circumstances of some of the incidents upon which Broderick relies for his § 1983 claim, the mere existence of some factual dispute does not defeat

summary judgment where Broderick has failed to raise a disputed issue of material fact. Petsch-Schmid v. Boston Edison Co., 914 F. Supp. 697, 702 (D. Mass. 1996).[3]

For all of these reasons, the Court GRANTS Defendants' motion for summary judgment as to Count I (§ 1983 claims against Talbot and Broderick).

### B. Remaining State Law Claims

Having dismissed the § 1983 claim, the Court declines to exercise jurisdiction over the remaining pendent state claims under 28 U.S.C. § 1367(c). Camelio v. American Federation, 137 F.3d 666, 672 (1st Cir. 1998); see Robertson, 2009 WL 2144371, at *3. Accordingly, the Court dismisses those state law claims without prejudice and the plaintiff may "bring [the] unadjudicated claims before the Commonwealth courts." Gonzalez-de-Blasini v. Family Dep't, 377 F. 3d 81, 89 (1st Cir. 2004).

## VI. Conclusion

For the foregoing reasons, the Defendants' motion for summary judgment is GRANTED as to Count I (§ 1983 claims against Talbot and Broderick). The remaining state law claims and counterclaims are dismissed without prejudice.

**So ordered.**

/s/ Denise J. Casper
United States District Judge

---

[3] Given the Court's ruling above regarding the dismissal of the § 1983 claim, the Court need not reach Talbot's argument regarding qualified immunity.